## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**GERARDO VILLAGARCIA,**

      **Petitioner,**

  **v.**
                                   **CASE NO. 2:05-cv-810**
                                         **JUDGE FROST**
                                       **MAGISTRATE JUDGE ABEL**

**WARDEN, NOBLE CORRECTIONAL**
          **INSTITUTION,**

      **Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. Petitioner's unopposed motion to amend the petition to include additional claims, Doc. No. 10, is **GRANTED**. Petitioner's request for the appointment of counsel (*see* Traverse) is **DENIED**.

This case involves petitioner's September 23, 2004, convictions after a jury trial in the Franklin County Court of Common Pleas on two counts of child endangering and felonious assault arising from the injuries sustained by five month old Madison Freditz allegedly while in petitioner's care. Petitioner's convictions and sentence were affirmed by the state appellate court and Ohio Supreme Court. In this federal habeas corpus petition, petitioner asserts that his convictions violate the Double Jeopardy Clause, that he was denied a fair trial due to improper jury instructions, sentenced in violation of *Blakely v. Washington*, 542 U.S. 296 (2004), and denied his right to appeal and to the effective assistance of counsel due to his attorney's failure to timely file an appeal after

petitioner was re-sentenced by the state trial court.

For the reasons that follow, the Magistrate Judge concludes that claim four is procedurally defaulted, and that claims one, two, and three are without merit, and **RECOMMENDS** that these claims be **DISMISSED**; the Magistrate Judge also **RECOMMENDS** that the petition be **GRANTED** on claims eight and nine, in which petitioner asserts that his sentence violates *Blakely v. Washington, supra*, and that petitioner's sentence be **VACATED** and he be released from incarceration unless the State of Ohio re-sentences him within ninety (90) days.  The remainder of petitioner's claims are moot in view of the recommendation that the writ be granted on claims eight and nine, and are not addressed here.

## I.  FACTS AND PROCEDURAL HISTORY

The Ohio Court of Appeals summarized the facts of this case as follows:

> By indictment filed November 8, 2002, appellant was charged with one count of child endangering in violation of R.C. 2919.22(B)(1), one count of child endangering in violation of R.C. 2919.22(A), and one count of felonious assault in violation of R.C. 2903.11(A)(1). These charges stemmed from injuries Madison Freditz ("Madison"), a five-month old baby, sustained in September 2002. At that time, Madison and her mother, Trish Fredritz-Nonato ("Trish"), were living with appellant. After appellant pled not guilty to all of the charges, the case proceeded to a jury trial. The testimony presented at trial revealed the following facts.
>
> On September 19, 2002, Trish and her mother, Patricia Fredritz ("Mrs.Fredritz"), took Madison to a doctor's appointment to get her immunization shots. The doctor noticed a bruise on Madison's back, but blood tests and X-rays revealed nothing unusual. Trish testified that the bruise could have occurred earlier in the week when Madison slipped while Trish washed her in the bathroom sink. Trish had to work after the doctor's appointment, so Mrs. Fredritz kept Madison for the night. Mrs. Fredritz testified that although Madison was a little feverish, nothing occurred that night to cause her any concern.

The next morning, Mrs. Fredritz fed and bathed Madison. Nothing occurred that morning to cause her any concern for Madison. Ms. Fredritz returned Madison to Trish later that afternoon. Trish then dropped Madison off with Jocelyn Garcia ("Ms .Garcia"), appellant's relative. Ms. Garcia testified that Madison was acting normally when Trish dropped her off at her house. Ms. Garcia gave Madison a bottle around 5 p.m. that night. Although Madison spit up a bit of the formula, Ms. Garcia was not concerned. After Madison had a nap, Ms. Garcia fed her another bottle, which she took without a problem. Ms. Garcia then put Madison to bed. While Madison slept, Ms. Garcia noticed that Madison's head was moving from side to side. Ms. Garcia was a bit worried and called Trish. Trish told Ms. Garcia that Madison was probably just reacting to her shots. Appellant came to Ms. Garcia's house around 10 p.m. and took Madison back to his house. Ms. Garcia testified that Madison seemed normal when appellant picked her up.

Trish testified that she spent the next day, September 21, 2002, with Madison. After Madison woke up at 7:30 a.m ., Trish bathed and fed her a bottle. Trish gave Madison another bottle at about 1 p.m. Trish gave Madison a third bottle around 4 p.m., which Madison did not finish. After that feeding, Trish and appellant laid Madison on the floor. Madison was restless and crying. Around 5 p.m., Trish went to work, leaving appellant and Madison alone in the apartment. When she left, Madison was sleeping on the floor.

Appellant testified that on September 21, 2002, he gave Madison a bottle around 4:30 p.m., and she took half of the bottle. He and Trish then laid a blanket down on the floor and put Madison to sleep. Madison had her normal color but was moving her head from side to side while she slept. After Trish left to go to work around 5 p.m., appellant took Madison off the floor and placed her into her cradle. She did not wake up or cry and he did not observe anything abnormal. Appellant went back to the living room and eventually fell asleep. He woke up around 8:35 p.m. and realized that he had not fed Madison. He went to the kitchen to prepare a bottle. He then woke Madison and she began to cry. Appellant realized that Madison's diaper was soiled. Appellant then changed her diaper. Madison continued to cry.

Appellant left Madison and went to the kitchen to turn the stove off. When he returned from the kitchen, he noticed that Madison was having a hard time breathing. He picked Madison up and began

3

shaking her. He testified that he would grab her and shake her a little bit so that she would respond. Appellant testified that he shook Madison once and then shook her again, this time harder, when she did not respond. He denied hitting Madison, although he testified that her head was rattling when he shook her. Ten to 15 minutes later, appellant called Trish. Appellant did not call 911 because he does not speak English. After calling Trish, appellant held Madison in his arms. He testified that Madison was not crying or responding and was almost fainting. Appellant had no idea how Madison received the injuries she sustained.

Trish received appellant's phone call at work around 8:30 p.m. Appellant told her that something was wrong with Madison and that she should come home. Appellant sounded upset and panicked on the phone. When she returned home, Trish saw Madison in appellant's arms. Madison appeared pale and limp and Trish could not tell if she was breathing or not. Appellant was jiggling Madison to keep her alert. Trish then called 911.

When paramedics from the Columbus Fire Department arrived, Trish met them with Madison. Paramedic Henry Windle took Madison to his ambulance and assessed her condition. Madison was alert and conscious although a bit lethargic. Windle also felt that Madison was somewhat pale and had a slightly abnormal heartbeat. The paramedics transported Madison to Children's Hospital where she was treated.

Dr. Mary Ranee Leder is a pediatrician and member of the Child Abuse Team at Children's Hospital. Dr. Leder examined Madison and reviewed her medical records, blood tests and X-rays. Dr. Leder testified that the emergency department records indicated that Madison had several bruises on her body on admission, but that they had all healed by the time she examined Madison a few days later. After reviewing Madison's head scans and X-rays, Dr. Leder determined that Madison's skull was fractured and that she had a subdural hematoma, or bleeding in two areas on the surface of her brain between the brain and the skull. Dr. Leder described Madison's head injuries as severe. She testified that a subdural hematoma occurs as the result of a tearing of the blood vessels that run between the brain and the skull. These injuries are typically caused by an impact or by a severe acceleration force applied to the baby, such as may occur in severe motor vehicle accidents, where a baby falls from a substantial height, or where a baby is vigorously shaken.

4

Dr. Leder further testified that she asked Trish about Madison's condition the week before Madison was brought to the hospital. Trish stated that Madison was in her usual good state of health during that week. Trish told Dr. Leder that she bathed and fed Madison at 7:15 a.m. on September 21, 2002, and fed her later that day at 4:30 p.m. Trish told Dr. Leder that Madison seemed to be in good health that day and had no problems taking her 4:30 p.m. bottle. However, Trish indicated that she felt Madison was restless, meaning that Madison did not sleep as soundly as normal.

Dr. Leder further testified that absent evidence of an accidental cause, Madison's injuries were the result of shaken baby/impact syndrome. Dr. Leder explained that shaken baby syndrome is a set of medical findings that typically include some sort of head injury, which could include bleeding on the brain as well as injuries to the eye and other injuries such as fractures to different bones in the body. Shaken impact syndrome is a similar set of findings, with the addition of injuries such as a skull fracture or a bruise or swelling to the head that would suggest the baby's head was impacted against an object. She concluded that the only plausible explanation for Madison's injuries was vigorous shaking with impact, the type of shaking that a reasonable observer would realize is dangerous and could result in injury.

Dr. Leder also explained that these injuries would cause a baby to have problems breathing, to have problems eating, and to look limp or pale. Madison's symptoms would be more significant than just restlessness. Dr. Leder concluded that Madison's injuries most likely occurred sometime between the time she was last noted to appear normal, when Trish left her around 5 p.m., and later that night when appellant and Trish noticed that she was clearly abnormal, i.e., limp and pale. Madison's last feeding around 4:30 p.m. that day was also relevant to the timing of her injuries because Dr. Leder testified that it would be highly unlikely that a baby could eat normally after sustaining a head injury of this nature. Dr. Leder testified that Madison's skull fracture was of recent origin because Dr. Leder observed no healing of the fracture. She testified that the skull fracture could have occurred even a few hours before the X-ray was taken. Dr. Leder admitted that Trish told her Madison had bruised her forehead on the September 14, 2002, when she fell on a changing table and bumped her forehead. However, Dr. Leder opined that given the severity of Madison's injuries, the fall Trish described was insufficient

5

to explain Madison's injuries.

On cross-examination, Dr. Leder testified that babies with less severe head injuries may act fussy or cry more. A head injury may also cause seizures in a baby, although she testified that the head movements described by Ms. Garcia would be an unusual manifestation of a seizure and would not raise her suspicions that Madison suffered a seizure. Dr. Leder explained that Madison did have a seizure while she was in the hospital, but that the seizure was caused by her injuries. Dr. Leder also testified that the vaccinations Madison received two days before she was admitted to the hospital would not have caused her severe head injuries. Dr. Leder indicated that the onset of symptoms after a head injury such as that sustained by Madison could be immediate or could take 12 to 24 hours. However, because Madison had to be placed on life support as a result of her injuries, it was likely that her symptoms appeared immediately.

On September 23, 2002, Detectives Anthony Monturo and Richard Moore of the Columbus Police Department's Juvenile Bureau interviewed appellant. Detective Moore testified that appellant did not indicate that Madison had any problems before September 21, 2002. Appellant told the detective that Madison was fed in the morning and then again around 4:30 p.m. Appellant told them that Trish left him alone with Madison around 5 p.m., and that Madison slept for a few hours. Appellant then woke her to feed her. He found that her diaper was soiled. Appellant told the detectives that he then went to prepare a bottle to feed her. When he came back from the kitchen, Madison was pale and not breathing, and he felt something was wrong. The detectives both testified that appellant stated that he then picked up Madison and shook her in an attempt to revive her. Appellant indicated that it was a light to medium shake. At that point, appellant told the detectives he called Trish to come home. Appellant also told the detectives that he shook Madison again after Trish came home. He described a light to medium back-and-forth motion.

The jury found appellant guilty of felonious assault and both child-endangering counts. The trial court sentenced appellant to a seven-year prison term for his felonious assault conviction and to seven-year and four-year prison terms for his two child-endangering convictions. The trial court ordered the prison sentences served concurrently.

Exhibit 9 to Return of Writ.  Represented by new counsel, petitioner filed a timely appeal to the Tenth

6

District Court of Appeals. He asserted the following assignments of error:

1. THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT OF CONVICTION AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

2. THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT TO MORE THAN A MINIMUM SENTENCE WITHOUT MAKING THE REQUIRED STATUTORY FINDINGS. 3. THE TRIAL COURT ERRED WHEN IT DID NOT NOTIFY THE DEFENDANT OF HIS REQUIREMENTS UNDER POST-RELEASE CONTROL.

4. IMPOSITION OF MULTIPLE SENTENCES FOR ENDANGERING CHILDREN AS SEPARATELY CHARGED IN COUNTS ONE AND THREE OF THE INDICTMENT VIOLATES THE DOUBLE JEOPARDY CLAUSES OF THE STATE AND FEDERAL CONSTITUTIONS.

5. ENDANGERING CHILDREN AS CHARGED IN COUNTS ONE AND THREE OF THE INDICTMENT ARE ALLIED OFFENSES OF SIMILAR IMPORT. THE TRIAL COURT ERRED BY IMPOSING CONCURRENT SENTENCES FOR THE TWO OFFENSES WHEN IT SHOULD HAVE DIRECTED THE PROSECUTOR TO ELECT ON WHICH OFFENSE CONVICTION WOULD BE ENTERED AND SENTENCE PRONOUNCED.

6. ENDANGERING CHILDREN AS CHARGED IN COUNTS ONE AND THREE OF THE INDICTMENT, AND FELONIOUS ASSAULT AS CHARGED IN COUNT TWO, ARE ALLIED OFFENSES OF SIMILAR IMPORT. THE TRIAL COURT ERRED BY IMPOSING CONCURRENT SENTENCES FOR THE THREE OFFENSES WHEN IT SHOULD HAVE DIRECTED THE PROSECUTOR TO ELECT ON WHICH OFFENSE CONVICTION WOULD BY ENTERED AND SENTENCE PRONOUNCED.

7. THE COURT ERRONEOUSLY INSTRUCTED THE JURY [SIC] COULD BE FOUND GUILTY OF FELONIOUS ASSAULT IF IT DETERMINED HE KNOWINGLY CAUSED PHYSICAL

HARM TO THE VICTIM.

*Id.* On March 28, 2004, the appellate court affirmed petitioner's convictions, but sustained his second and third assignments of error and remanded the case to the trial court for re-sentencing. *Id.* Still represented by counsel, petitioner filed a timely appeal to the Ohio Supreme Court. He asserted the following propositions of law:

> 1. Endangering children in violation of Section 2919.22(A) of the Revised Code is a lesser included offense to the violation of the statute defined by 2919.22(B)(1). Therefore, imposition of multiple sentences for endangering children as separately charged in counts one and three of the indictment violates the Double Jeopardy Clauses of the state and federal Constitutions.

> 2. Endangering children in violation of Section 2919.22(A) of the Revised Code is an allied offense of similar import [in] violation of the statute defined by 2919.22(B)(1).

> 3. Endangering children in violation of Section 2919.22(A) or (B)(1) of the Revised Code is an allied offense of similar import to felonious assault in violation of R.C. 2903.11(A)(1).

> 4. A felonious assault conviction premised on "serious physical harm" must be reversed when the jury instructions mistakenly permit conviction based on mere "physical harm."

> 5. A conviction not supported by substantial credible evidence must be reversed.

Exhibit 10 to Return of Writ. On August 4, 2004, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Exhibit 12 to Return of Writ. On September 17, 2004, the trial court re-sentenced petitioner to the same sentence that had previously been imposed (*i.e.*, an aggregate term of seven years incarceration). September

23, 2004 Resentencing Entry, Exhibit 13 to Return of Writ. Petitioner never filed a timely appeal of

this sentence; however, on September 15, 2005, petitioner filed a motion for delayed appeal. He

alleged, as cause for his failure to file a timely appeal, that he had not been advised of his right to

appeal his sentence by counsel or the court, and argued that he had been sentenced in violation of the

Sixth Amendment. Exhibit 15 to Return of Writ. On October 27, 2005, the appellate court denied

petitioner's motion for delayed appeal. Exhibit 17 to Return of Writ. Petitioner filed a timely appeal

of the appellate court's decision to the Ohio Supreme Court. He asserted the following propositions

of law:

> 1. Pursuant to Article VI of the United States Constitution, all state court judges are bound by federal Constitution, Law, and its treaties, as federal law is supreme.

> 2. The Sixth Amendment under the united States Constitution guarantees the right to effective assistance of counsel throughout the entire criminal process. Trial counsel's failure to file a timely appeal from the re-imposition of the same sentence upon remand rendered ineffective assistance of counsel.

> 3. It is a denial of due process of law when the court of appeals denies motion for delayed appeal when the record clearly supports the indigent criminal non-English speaking defendant remains ignorant of such rights.... Therefore it is also a denial of equal protection of the law when one is kept ignorant [of] his appeal rights....

> 4. The sentence imposed is void pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, under federal law. Thus, Ohio's sentencing statutes are unconstitutional.... *Blakely v. Washington* (2004), 124 S.Ct. 2531....

> 5. The imposition of a sentence consisting of a prison term exceeding the shortest prison term specified in O.R.C. 2929.14(A) for the felony offense of conviction violates the defendant's right to a jury trial and

9

> right to due process under the sixth and Fourteenth Amendments to
> the United States Constitution, and the defendant's right to grand jury
> presentment under the Fifth Amendment and under Article I, Section
> 10, of the Ohio Constitution, when the additional findings required by
> O.R.C. 2929.14(B) for the imposition of a non-minimum prison term
> was not decided by a jury under the beyond a reasonable doubt
> standard.

Exhibit 17 to Return of Writ. On March 8, 2006, the Ohio Supreme Court denied leave to appeal

and dismissed the appeal as not involving any substantial constitutional question. Exhibit 20 to

Return of Writ.

On September 1, 2005, petitioner filed the instant *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of

the Constitution of the United States based upon the following grounds:

> 1. The conviction and sentence is void pursuant to the Fifth
> Amendment of the United States Constitution and Article I, Section
> 10 of the Ohio Constitution (double jeopardy).

> Based on a single course of conduct, petitioner was charged,
> convicted, and sentenced [on] two counts of endangering children.

> Count one alleged a violation of O.R.C. §2919.22(B)(1), a felony of
> the second degree.

> Count three alleged a violation of O.R.C. §2919.22(A), a third degree
> felony.

> Thus, count three charges a lesser included offense to count one, and
> that entry of conviction and imposition of concurrent sentences on
> these counts constitutes double jeopardy.

> 2. The conviction and sentence is void pursuant to the Fifth and

Fourteenth Amendments of the United States Constitution, and Article I, Sections 1 and 16 (due process of law and equal protection of the law).

According to O.R.C. §2941.25(A), when the same conduct can be construed to constitute two or more offenses of similar import, the indictment may contain counts for all such offenses, but the defendant may be convicted of only one.

Count three is... a lesser included offense to count one. It is also an allied offense of similar import . . . .

3. The conviction and sentence is void pursuant to the Fifth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution (double jeopardy).

. . . [T]he same conduct formed the basis for all three counts for which the petitioner was tried and convicted. . . .

4. The conviction and sentence is void pursuant to the Fifth, Sixth and Fourteenth Amendments under the United States Constitution and Article I, Sections 2, 10 and 16 of the Ohio Constitution (due process of law, fair trial and equal protection of law).

A felonious assault conviction premised on serious physical harm must be reversed when the jury instructions mistakenly permit a conviction based on mere physical harm. . . .

On March 16, 2006, petitioner filed a motion to amend his petition to include the following additional claims:

5. Pursuant to Article VI of the United States Constitution, all state court judges are bound by federal Constitution, law and its treaties, as federal law is supreme.

The state courts denied the indigent non-English speaking defendant

11

his right to appeal and to present his constitutional claims and federal questions in the state's appellate process. *See Wolfe v.Randle*, 267 F.Supp.2d 743, 750-751 (S.D. Ohio 2003).

6. The Sixth Amendment under the United States Constitution guarantees the right to effective assistance of counsel throughout the entire criminal process.

Trial counsel's failure to file a timely appeal from the re-imposition of the same sentence upon remand [constituted] ineffective assistance of counsel. . . .

7. It is a denial of due process of law when the court of appeals denies a motion for delayed appeal, when the record clearly supports the indigent criminal non-English speaking defendant remains ignorant of such rights. . . .

8. The sentence imposed is void pursuant to the Sixth and Fourteenth Amendments to the United States Constitution under federal law. Thus, Ohio's sentencing statutes are unconstitutional.

9. The imposition of a sentence consisting of a prison term exceeding the shortest prison term specified in O.R.C. §2929.14(A) for the felony offense of conviction violates the defendant's right to a jury trial and right to due process under the Sixth and Fourteenth Amendments to the United States Constitution and the defendant's right to grand jury presentment under the Fifth Amendment and under Article I, Section 10 of the Ohio Constitution, when the additional findings required by O.R.C. §2929.14(B) for imposition of a non-minimum prison term was not decided by a jury under the beyond a reasonable doubt standard. . . .

Petitioner's March 16, 2006, request to amend the petition with additional claims not raised in the initial habeas corpus petition may be barred by the statute of limitations, *see Mayle v. Felix,* 125 S.Ct. 2562, 2566 (2005); *Weidbrauk v. Lavigne*, 2006 WL 1342309 (6th Cir. May 17, 2006); however, respondent has neither opposed petitioner's request to amend the petition, nor raised the affirmative

defense of statute of limitations.  The Magistrate Judge therefore will not *sua sponte* consider the issue.  *See Day v. McDonaugh*, 126 S.Ct. 1675, 1684 (2006)("[D]istrict courts are permitted, but not obliged, to consider, *sua sponte,* the timeliness of a state prisoner's habeas petition.")  Petitioner's unopposed request to amend the petition is **GRANTED**.

It is the position of the respondent that petitioner's claims are either procedurally defaulted or without merit.

## I.  PROCEDURAL DEFAULT

## A.  CLAIM FOUR

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration.  28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies.  *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam)*; *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.  *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is

a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to

comply with the rule." *Id*. Second, the Court must determine whether the state courts actually

enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural

forfeiture is an adequate and independent state ground on which the state can rely to foreclose review

of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule

was not complied with and that the rule was an adequate and independent state ground, then the

petitioner is required to demonstrate that there was cause for him not to follow the procedural rule

and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and

prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level.

*Leroy v. Marshall,* 757 F.2d 94 (6th Cir. 1985).

     In claim four, petitioner asserts that he was denied a fair trial due to improper jury instructions

on felonious assault. This claim is readily apparent from the face of the record, and was properly

raised on direct appeal; however, the state appellate court reviewed the claim for plain error only due

to petitioner's failure to object at trial:

> [A]ppellant contends the trial court erred when it instructed the jury
> that it could find him guilty of felonious assault if he knowingly caused
> Madison physical harm, because the elements of felonious assault
> require the state to prove that appellant knowingly caused Madison
> *serious* physical harm. Appellant did not object to the instruction as
> given. Therefore, any error in the jury instructions merits reversal only
> if it rises to the level of plain error. *State v. McKnight* (Mar. 16,
> 1995), Franklin App. No. 94APA08-1242. A jury instruction does not
> amount to plain error " 'unless, but for the error, the outcome of the
> trial would clearly have been different.' " *Id.,* quoting *State v. Long*
> (1978), 53 Ohio St.2d 91, 97, 372 N.E.2d 804; *State v. Underwood*
> (1983), 3 Ohio St.3d 12, 14, 444 N.E.2d 1332. We note that plain
> error is to be recognized "with the utmost caution, under exceptional

circumstances and only to prevent a manifest miscarriage of justice."
*State v. Noling,* 98 Ohio St.3d 44, *2002-Ohio-7044,* at ¶ 62; *State v.
Thompson* (1987), 33 Ohio St.3d 1, 10, 514 N.E.2d 407; Crim.R.
52(B). Additionally, when reviewing the validity of a particular jury
instruction, the challenged instruction may not be reviewed in
isolation, but must be reviewed within the context of the entire charge.
*State v. Burchfield* (1993), 66 Ohio St.3d 261, 611 N.E.2d 819.

The trial court's definition of felonious assault omitted the word
*serious* from the instruction. However, we cannot say that the failure
to include the word *serious* in the definition of felonious assault
constituted plain error given the totality of the circumstances. First,
the trial court later instructed the jury that felonious assault required
serious physical harm. Second, one of appellant's child-endangering
convictions required the jury to find that appellant caused serious
physical harm to Madison. R.C. 2919.22(B)(1). The trial court
properly defined that term in its instruction to the jury on that charge
and the jury found appellant guilty of that charge, necessarily finding
that appellant caused Madison serious physical harm. Finally, there is
overwhelming evidence in the record that Madison sustained serious
physical harm. She was hospitalized with bleeding on the surface of
the brain and a skull fracture. Dr. Leder testified that Madison
sustained severe head injuries which typically occur in severe motor
vehicle accidents where the child is not wearing a seat belt or is
ejected from the car, where a baby falls from a substantial height, or
where a young child is vigorously shaken. For all of these reasons, we
cannot say that but for the trial court's error, the outcome of the trial
would clearly have been different. Accordingly, appellant's seventh
assignment of error is overruled.

Exhibit 9 to Return of Writ.  The United States Court of Appeals for the Sixth Circuit has held that

Ohio's contemporaneous objection rule constitutes an adequate and independent state ground to

preclude federal habeas corpus review.  *See Gulertekin v. Timmelman-Cooper*, 340 F.3d 415, 423-24

(6th Cir. 2003), citing *Hinkle v. Randle,* 271 F.3d 239, 244; *Seymour v. Walker,* 224 F.3d 542, 557

(6th Cir.2000) ("Controlling precedent in our circuit indicates that plain error review does not

constitute a waiver of state procedural default rules."); and *Scott v. Mitchell,* 209 F.3d 854, 867 (6th

Cir.2000) ("[T]he Supreme Court [has] specifically found that default imposed for failure to object contemporaneously as required by Ohio's Rule 30 is an adequate and independent state ground").

Petitioner therefore has waived his right to present claim four for federal habeas corpus review. Petitioner can still obtain review of claim four if he demonstrates cause for his failure to follow state procedural rules as well as actual prejudice from the constitutional violation that he alleges. Petitioner has failed to demonstrate either cause for his procedural default of claim four or actual prejudice resulting from the alleged constitutional violation that he alleges.

### B. CLAIMS EIGHT AND NINE

In claims eight and nine, petitioner asserts that his sentence violates *Blakely v. Washington*, *supra*, 542 U.S. at 296. It is the position of the respondent that this claim is procedurally defaulted because he failed to raise the issue in his first appeal, which was filed long before *Blakely* was decided. Respondent contends that petitioner should have raised an issue under the *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), in order to preserve his *Blakely* claim for federal habeas corpus review. *Return of Writ*, at 23. Respondent's argument is not well taken.

Petitioner was sentenced to two terms of seven years incarceration for his convictions on endangering children, in violation of O.R.C. §2919.22 and felonious assault, in violation of O.R.C. §2903.11, both which offenses are second degree felonies carrying a maximum term of eight years incarceration. *See* O.R.C. §2929.14(A)(2). He was sentenced to four years incarceration for his conviction on endangering children, which offense is a third degree felony carrying a maximum statutory term of five years incarceration. O.R.C. §2929.14(A)(3). His sentences were ordered to be served concurrently. *See* Exhibits 5 and 9 to Return of Writ. Thus, the record does not reflect

16

that petitioner was sentenced in violation of *Apprendi* as that case had been interpreted prior to *Blakely*. *See United States v. Fitch*, 282 F.3d 364, 368 (6th Cir. 2002), citing *United States v. Corrado*, 227 F.3d 528, 542 (6th Cir. 2000). Additionally, respondent has referred to no cases standing for the proposition that a defendant sentenced prior to *Blakely* must raise a claim under *Apprendi* in the first instance or waive his right to later present a *Blakely* claim in federal habeas corpus review regardless of whether he has properly presented his *Blakely* claim to the state courts, nor is this Court aware of any such cases. *United States v. Levy*, 379 F.3d 1241 (11th Cir. 2004), referred to by respondent does not support respondent's argument. *Levy, supra,* involved the United States Court of Appeals for the Eleventh Circuit's denial of a petition for rehearing of the direct appeal, and does not discuss the procedural default doctrine as it applies to federal habeas corpus review.

Further, neither petitioner, nor his appellate counsel could reasonably have anticipated the Supreme Court's decision in *Blakely*. *See United States v. Burgess,* 142 Fed.Appx. 232, unpublished 2005 Fed.App. 0531N (6th Cir. June 22, 2005)(no ineffective assistance of counsel for failing to predict *Blakely*); *Green v. United States,* 65 F.3d 546, 551 (6th Cir.1995) ; *United States v. Gonzalez-Lerma,* 71 F.3d 1537, 1542 (10th Cir.1995); *Nelson v. Estelle,* 642 F.2d 903, 908 (5th Cir.1981); *Conley v. United States,* 2005 WL 1420843 (W.D.Mich. June 15, 2005)(same). Petitioner properly raised his *Blakely* claim in his motion for delayed appeal after being re-sentenced by the state trial court. His sentence was vacated by the Ohio Court of Appeals on March 28, 2004, prior to the United States Supreme Court's June 24, 2004, decision in *Blakely*. He was re-sentenced on September 17, 2004, after *Blakely*. Exhibits 13 and 14 to Return of Writ. Petitioner did not file a timely appeal of his re-sentencing; however, he raised a *Blakely* claim approximately one year later,

17

in his September 26, 2005, motion for delayed appeal pursuant to Ohio Appellate Rule 5(A).  Exhibits

16 and17 to Return of Writ.  Respondent does not contend that petitioner procedurally defaulted his

*Blakely* claim by failing to file a timely appeal of his September 17, 2004, sentence.[1]

This Court therefore will consider the merits of claims eight and nine.

## C.  MERITS

Petitioner asserts in claims eight and nine that his sentence violates *Blakely* because he was

sentenced as a first time offender to beyond the statutory minimum under provisions of O.R.C.

§2929.14(B) that have since been declared unconstitutional by the Ohio Supreme Court in *State v.*

*Foster*, 109 Ohio St.3d 1 (Ohio 2006).  As discussed, petitioner first raised his *Blakely* claim in a

motion for delayed appeal from his re-sentencing, which motion was denied by the state appellate

court as follows:

> On September 26, 2005, defendant-appellant, Gerardo Villa-Garcia
> ("appellant"), filed a motion seeking leave to file a delayed appeal
> from the sentence and judgment of the Franklin County Court of
> Common Pleas journalized on September 23, 2004.   The state
> opposes this motion . . . .
>
> Appellant was convicted in 2003 of two counts of child endangering,
> one count (Count One) a felony of the second degree and one count
> (Count Three) a felony of the third degree, and one count of felonious
> assault, a felony of the second degree.  On direct appeal, this court
> affirmed appellant's convictions but remanded for resentencing
> holding that the trial court had failed to make the necessary required
> findings according to law.  *State v. Villa-Garcia*, Franklin App. No.
> 03AP-384, 2004-Ohio-1409.  Appellant was resentenced accordingly

---

[1]  In *Deitz v. Money*, 391 F.3d 804, 810 (6th Cir. 2004), the United States Court of
Appeals for the Sixth Circuit held that Ohio's Appellate Rule 5(A), the provision governing
delayed appeals, does not constitute an adequate state ground to preclude federal habeas corpus
review.

by the trial court to a seven year period of incarceration on both second degree felony convictions and a four year period of incarceration on the third degree felony count of child endangering. Each period of incarceration was ordered to be served concurrently for a total seven year sentence.  The judgment entry journalizing the imposed sentence was filed September 23, 2004.

Here, appellant seeks a delayed appeal pursuant to App.R. 5(A) which states:

(1) After the expiration of the thirty day period provided by App.R. 4(A) for filing of a notice of appeal as of right, an appeal may be taken by a defendant with leave of the court to which the appeal is taken in ***;

(a) Criminal proceedings;

***

(2) A motion for leave to appeal shall be filed with the court of appeals and shall set forth the reasons for the failure of the appellant to perfect an appeal as of right. ***

Thus, appellant must demonstrate a reasonable explanation for failure to perfect a timely appeal.  *State v. Cromlish* (1994), Franklin app. No. 94AP-855.  Absent such explanation, this court has held that a "substantial lag" of an eight month delay in filing a motion for leave to appeal was excessive.  *State v. Berry*, Franklin App.No. 05-AP-849.  *See, also, State v. Evans* (Sept. 19, 2002), Franklin app. No. 02AP-238.

Appellant now, well outside the 30-day appeal time, seeks leave to appeal the sentence imposed by the court.  In the present case, appellant asserts he was prevented from perfecting a timely appeal because neither his attorney, nor the court, through an interpreter or otherwise, advised him of his right to appeal the resentencing.  This assertion, alone, however, does not constitute sufficient justification for failure to perfect a timely appeal.  Appellant does not inform this

19

court of how or when he learned of his right to appeal the resentencing, nor of what steps he took to effectuate an appeal after learning of such.  Ignorance of the law does not automatically establish good cause for failure to seek a timely appeal under App.R. 5(A)....

Additionally, appellant apparently wishes to challenge his sentence pursuant to *Blakely v. Washington* (2004), 542 U.S. 296... and *Apprendi v. New Jersey* (2000), 530 U.S. 486... as appellant claims that the sentences imposed were contrary to law in that the court imposed a sentence in excess of the minimum sentence.  He also claims his Sixth Amendment rights were violated in that he did not receive effective assistance of counsel upon remand and sentencing, nor did a jury "determine the necessary elements for the court to impose more than the minimum prison term."

In *Apprendi,* the United States Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Id.* at 490.  A sentence that is greater than the statutory maximum and which is not based upon facts admitted by the defendant or found by a jury beyond a reasonable doubt, violates the defendant's right to a trial by jury as guaranteed by the Sixth Amendment to the United States Constitution.  In *Blakely*, the United States Supreme Court defined "'statutory maximum' for *Apprendi* purposes" as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*."  *Blakely, supra*, at 2537.  (Emphasis sic.)

We reject appellant's *Blakely*-based argument, just as we have done in a recent line of cases beginning with *State v. Abdul-Mumin*, Franklin App. No. 04AP-485, 2005-Ohio-522.  In that case, we held that, Ohio's sentencing scheme does not encroach upon the traditional and constitutionally required role of the jury in finding those facts that fix the upper limit, or in *Blakely* terms, the "statutory maximum" sentence to which one accused of a felony knows he will be exposed upon walking through the courtroom door, is established by statute. R.C. 2929.14(B) does not allow judge-made findings to enhance a defendant's punishment beyond the maximum sentence corresponding to the class of offense of which he is convicted or to which he pleads

guilty. *See, also, State v. Sieng*, Franklin App. No. 04AP-556, 2005-Ohio-1003, *State v. Cockroff*, Franklin App. No. 04AP-608, 2005-Ohio-748, *State v. Smith*, Franklin App. No. 04AP-859, 2005-Ohio-2560, *State v. Satterwhite*, Franklin App. No. 04AP-964, 2005-Ohio-2823.

In the present case, the jury verdict authorized the trial court to impose a sentence ranging from one to five years on the third degree felony count of child endangering and a sentence ranging from two to eight years on the remaining second degree felonies of which appellant was convicted. The trial court imposed a period of incarceration on each count which was below the "statutory maximum" for *Apprendi* purposes. Thus, appellant's sentence did not run afoul of *Blakely* and *Apprendi*.

For the above stated reasons, we find that appellant has failed to demonstrate a reasonable explanation for the substantial delay of over 11 months in filing his appeal. Therefore, appellant's motion to file delayed appeal is denied.

Exhibit 17 to Return of Writ.

The decision of the state appellate court is presumed to be correct:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State

21

> court, a determination of a factual issue made by a State court shall be
> presumed to be correct. The applicant shall have the burden of
> rebutting the presumption of correctness by clear and convincing
> evidence.

28 U.S.C. §2254(d), (e).

In *Maldonado v. Wilson*, 416 F.3d 470, 475 (6th Cir. 2005), the Sixth Circuit explained when

a state Court's decision is "contrary to" and when it is "an unreasonable application" of clearly

established federal law:

> A state court's determination is contrary to federal law when the state
> court arrives at a conclusion opposite to that reached by the Supreme
> Court on a question of law or on indistinguishable facts. *Williams v.
> Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389
> (2000). A state court's decision is an unreasonable application of
> federal law when the state court correctly identified the applicable
> legal principle from Supreme Court precedent, but applied that
> principle to the facts before it in an unreasonable manner. *Id.* at 413,
> 120 S.Ct. 1495.

Petitioner has met this standard here.

In *Apprendi v. New Jersey,* above, a jury convicted the defendant of possession of a firearm

for an unlawful purpose, a second degree felony punishable by a maximum term of 10 years in prison.

A judge found by a preponderance of the evidence that defendant committed the second degree felony

with a purpose to intimidate a person because of his race. That finding escalated the offense to a third

degree felony carrying a maximum sentence of 20 years in prison. 530 U.S. at 468-69. The Supreme

Court held that:

> Other than the fact of a prior conviction, any fact that increases the
> penalty for a crime beyond the prescribe statutory maximum must be
> submitted to a jury, and proved beyond a reasonable doubt.

*Id.* at 490.

In *Blakely v. Washington*, above, the Supreme Court held that a judge's fact finding could not permit a sentencing enhancement that imposed a term greater than the maximum sentence for the underlying crime:

> [T]he relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," [1 J.] Bishop, Criminal Procedure], *supra*, § 87, at 55, and the judge exceeds his proper authority.

524 U.S. at 303-04. In *United States v. Booker*, 543 U.S. 220 (2005), the United States Supreme Court subsequently struck the mandatory provisions of the United States Sentencing Guidelines as unconstitutional under *Blakely. Id.*, at 258-259.

The Ohio Supreme Court similarly has held that under *Blakely* Ohio's sentencing statutes unconstitutionally permit judges to make findings of fact not included in the jury's verdict or admitted in the defendant's guilty plea that support sentences greater than the presumptive sentence:

> Certain aspects of Ohio's felony sentencing plan are unconstitutional when measured against the Sixth Amendment principles established in *Blakely*. The reason for this is, like many state legislatures that attempted sentencing reform, the Ohio General Assembly, through its enactment of S.B. 2 in 1996, authorized narrower sentencing ranges and restricted the discretion of trial judges by *mandating* that underlying "findings" be made before increasing what seems to be a presumptive sentence. In other words, the sentence is not determined "solely on the basis of facts reflected in the jury verdict or admitted by the defendant" as *Blakely* requires. (Emphasis omitted.) Id., 542 U.S. at 303, 124 S.Ct. 2531, 159 L.Ed.2d 403.

23

> ***
>
> Ohio's sentencing statutes offend the constitutional principles announced in *Blakely* in four areas. As was reaffirmed by the Supreme Court in *Booker,* "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.*, 543 U.S. at 244, 125 S.Ct. 738, 160 L.Ed.2d 621.
>
> Because R.C. 2929.14(B) and (C) and 2929.19(B)(2) require judicial factfinding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant, they are unconstitutional. Because R.C. 2929.14(E)(4) and 2929.41(A) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before imposition of consecutive sentences, they are unconstitutional. Because R.C. 2929.14(D)(2)(b) and (D)(3)(b) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant, before repeat violent offender and major drug offender penalty enhancements are imposed, they are unconstitutional. *Apprendi,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435; *Blakely,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.

*State v. Foster,* 109 Ohio St.3d 1 (Ohio 2006).  The Ohio Supreme Court excised the unconstitutional provisions of its sentencing statutes in accordance with the Supreme Court's remedial action in *United States v. Booker*, 543 U.S. 234, 764 (2005)(severing and excising unconstitutional provisions of United States Sentencing Guidelines rather than invalidating sentencing guidelines in their entirety):

> We therefore hold that R.C. 2929.14(B) and (C) and 2929.19(B)(2) are capable of being severed. After the severance, judicial factfinding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant. We further hold that R.C. 2929.14(E)(4) and 2929.41(A) are capable of being severed. After the severance, judicial factfinding is not required before imposition of consecutive prison

terms. Finally, we hold that R.C. 2929.14(D)(2) and (3) are capable of being severed. After the severance, judicial factfinding is not required before imposition of additional penalties for repeat violent offender and major drug offender specifications. The appellate statute R.C. 2953.08(G), insofar as it refers to the severed sections, no longer applies.

Accordingly, we have concluded that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences.

*State v. Foster, supra*. The Ohio Supreme Court further held:

These cases and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion.

*Id.*

Respondent nonetheless contends that petitioner's sentence became final on August 4, 2004, when the Ohio Supreme Court dismissed his first appeal, and that *Blakely*, which is not retroactively applicable on direct review, *Humphress v. United States*, 398 F.3d 855, 863 (6th Cir. 2005), therefore is inapplicable to this case. Respondent's argument is unavailing. Petitioner was re-sentenced in September 2004, after *Blakely* was decided. Petitioner's sentence therefore did not become final until after *Blakely* was decided. *See Linscott v. Rose*, 436 F.3d 587, 591 (6th Cir. 2006)(holding that "the one-year statute of limitations begins to run on a habeas corpus petition that challenges a resentencing judgment on the date that the resentencing judgment became final, rather than the date that the original conviction became final.")(Citations omitted).

For the reasons detailed at length by the Ohio Supreme Court in *State v. Foster, supra*, the

the trial court's imposition of more than the minimum mandatory sentence under O.R.C. §2929.14(B)

violated *Blakely*.  As discussed by the Ohio Supreme Court in *State v. Foster, supra*:

> Foster challenges R.C. 2929.14(B), which states:
>
> "*[I]f the court* imposing a sentence upon an offender for a felony *elects or is required to impose a prison term* on the offender, the *court shall impose the shortest prison term* authorized for the offense pursuant to division (A) of this section [setting forth the basic ranges], *unless one or more of the following* applies:
>
> "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
>
> "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." (Emphasis added.)
>
> Thus, Ohio has a presumptive minimum prison term that must be overcome by at least one of two judicial findings. For someone who has never been to prison before (not necessarily a first-time offender), the court must find that the shortest term will "demean the seriousness" of the crime or will inadequately protect the public; otherwise, the court must find that the offender has already been to prison to impose more than a minimum term. R.C. 2929.14(B)(2).
>
> Under R.C. 2929.14(B), therefore, a court is not authorized to exceed the shortest prison term unless it makes the additional findings. *State v. Edmonson* (1999), 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (findings required, reasons not); *State v. Comer,* 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473 (findings required for first offender). Since a jury verdict alone does not determine the sentence, R.C. 2929.14(B) violates *Blakely* principles.

*State v. Foster, supra.*  Here child endangering is a third degree felony carrying prison sentences

ranging from one to five years.  And the remaining charges were second degree felonies carrying from

two to eight years in prison.  Because Ohio Revised Code § 2929.14(B) provides that the judge must

"impose the shortest prison term authorized," absent findings supporting an enhancement, petitioner's

sentences beyond the presumptive statutory minimum sentences violate the rule announced in *Blakely*.

Respondent argues that, because the Ohio Supreme Court did not decide in *Foster* that Ohio's

sentencing statutes violated *Blakely* until after petitioner's appeal had already been decided, and in

view of the uncertainty and confusion in state and federal courts regarding application of *Blakely*, the

Ohio Court of Appeals decision rejecting petitioner's *Blakely* claim was not unreasonable under 28

U.S.C. §2254(d). However, the timing of the Ohio Supreme Court's consideration of *Blakely's*

ramifications on Ohio's sentencing scheme is irrelevant to application of *Blakely* to the sentence

imposed in this case, since *Blakely* was decided prior to the time that petitioner was re-sentenced.

Additionally, regardless of any lack of consensus or struggle by the state or federal courts to apply

*Blakely* to state and federal sentencing schemes, for the reasons discussed by the Ohio Supreme Court

in *Foster, supra*, the Ohio Court of Appeals decision denying petitioner's *Blakely* claim is objectively

contrary to and an unreasonable application of clearly established federal law, as determined by the

United States Supreme Court, or based on an unreasonable determination of the facts in light of the

evidence that was presented. 28 U.S.C. §2254(d).

> A federal court may grant the writ under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." *Cone,* 535 U.S. at 694; *see also Andrade*, 538 U.S. at 75; *Williams,* 529 U.S. at 409. ... "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Williams, 529 U.S. at 410. [FN6] "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. [FN7]

> FN6. *See also Andrade*, 538 U.S. at 75 (lower court erred by equating

"objectively unreasonable" with "clear error"; "These two standards, however, are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam*) (holding that the lower court "did not observe this distinction [between an incorrect and an unreasonable application of federal law], but ultimately substituted its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)."); *Cone*, 535 U.S. at 698-99 ("For [a habeas petitioner] to succeed ..., he must do more than show that he would have satisfied *Strickland'* s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly."); *Williams,* 529 U.S. at 411 ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").

FN7. *See also Brown v. Payton*, 544 U.S. 133, 125 S.Ct. 1432, 1442, 161 L.Ed.2d 334 (2005) ("Even were we to assume the " 'relevant state-court decision applied clearly established federal law erroneously or incorrectly," ' ... there is no basis for further concluding that the application of our precedents was 'objectively unreasonable." ') (citations omitted).

*Leavy v. Turner*, 2006 WL 1579553 (W.D. Tenn. June 1, 2006)(footnote omitted); *see also Higgins v. Renico,* 470 F.3d 624 (6th Cir. 2006); *Wade v. White,* 368 F.Supp.2d 695, 699 (E.D. Mich. 2005), citing *Brown v. Payton, supra*.  The state appellate court's decision denying petitioner's *Blakely* claim by reasoning that petitioner was sentenced within the range authorized by law for the statutes of conviction, and therefore within the "statutory maximum" as defined under *Apprendi, see* Exhibit 17 to Return of Writ, *supra,* is an objectively unreasonable application of *Blakely*.  As discussed, the Supreme Court in *Blakely* defined "statutory maximum" as

"the maximum sentence a judge may impose *solely on the basis of*

28

> *facts reflected in the jury verdict or admitted by the defendant."*

*United States v. Booker, supra*, 543 U.S. at 232.  Similarly, here, petitioner was sentenced to more than the minimum sentence as a first time offender under terms of a statute that required judicial fact finding for imposition of greater than the minimum sentence.  *See State v. Foster, supra*, 109 Ohio St.3d at 25.

The Magistrate Judge therefore **RECOMMENDS** that the petition for a writ of habeas corpus be **GRANTED** on claims eight and nine, and that petitioner's sentence be **VACATED** and petitioner released from incarceration, unless the State of Ohio re-sentences him within ninety (90) days.

## II.  CLAIMS ONE, TWO, AND THREE

In claim one, petitioner asserts that his convictions on two counts of endangering children, on counts one and three, in violation of O.R.C. 2919.22(B)(1), and 2919.22(A) violate the Double Jeopardy Clause.  In claim two, petitioner asserts again asserts that his convictions on counts one and three violate the Double Jeopardy Clause.  He also asserts that such convictions constitute allied offenses of similar import under Ohio law.  In claim three, petitioner similarly asserts that his convictions on all counts arising from the same conduct and violate the Double Jeopardy Clause.  The state appellate court rejected petitioner's claims as follows:

> Appellant contends in his fourth assignment of error that the trial court erred when it imposed multiple sentences for his multiple child-endangering convictions.  Appellant contends that he could not be subjected to multiple punishments for these offenses because child endangering pursuant to R.C. 2919.22(A) is a lesser-included offense of child endangering pursuant to R.C. 2919.22(B)(1).  We disagree.

The Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The right is likewise guaranteed by Section 10, Article I of the Ohio Constitution, which states: "No person shall be twice put in jeopardy for the same offense." This prohibition has three distinct aspects. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 89 S.Ct. 2089, 23 L.Ed.2d 656, overruled on other grounds, *Alabama v. Smith* (1989), 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865.

Greater and lesser offenses are the same for purposes of the double jeopardy prohibition against multiple punishments when the lesser offense does not require proof of an element different from that required for proof of the greater offense. *Brown v. Ohio* (1977), 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187. An offense may be a lesser-included offense of another if (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus. When making the comparison *Deem* requires, the offenses must be compared " *as statutorily defined* and not with respect to specific factual scenarios." *State v. Barnes* (2002), 94 Ohio St.3d 21, 26, 759 N.E.2d 1240, (emphasis sic).

In order to convict a defendant of child endangering under R.C. 2919.22(A), the state must prove that: (1) an individual who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of; (2) a child under 18 years of age; (3) recklessly created a substantial risk to the health or safety of the child; and (4) by violating a duty of care, protection, or support. To convict a defendant of child endangering under R.C. 2919.22(B)(1), the state must prove that: (1) the child is under 18 years of age; (2) an affirmative act of abuse occurred; and (3) the defendant recklessly committed the act of abuse.

These two offenses satisfy the first prong of the *Deem* test. R.C.

30

2919.22(A), as enhanced, is a third degree felony while R.C. 2919.22(B)(1), as enhanced, is a second degree felony. However, the two offenses, as statutorily defined, do not satisfy the second prong of the *Deem* test. As statutorily defined, an individual can commit the greater offense in R.C. 2919.22(B)(1) without committing the lesser offense in R.C. 2919.22(A). *State v. Minor* (Mar. 21, 1991), Cuyahoga App. No. 58289; *State v. Smathers* (Dec. 20, 2000), Summit App. No. 19945; *State v. Jones* (Dec. 7, 1989), Licking App. No. CA-3457. Any individual who recklessly abuses a child may violate R.C. 2919.22(B)(1). However, only a certain, defined group of people who violate a duty of care, protection or support can violate R.C. 2919.22(A). Therefore, a person not in that class of people can violate R.C. 2919.22(B)(1) without violating R.C. 2919.22(A). Additionally, one can recklessly abuse a child in violation of R.C. 2919.22(B)(1) without violating a duty of care as required by R.C. 2919.22(A). *Smathers, supra; State v. Cherry,* Summit App. No. 20771, *2002-Ohio-3738,* at ¶ 80. Because the greater offense can be committed without committing the lesser offense, R.C. 2919.22(A) is not a lesser-included offense of R.C. 2919.22(B)(1). Appellant's fourth assignment of error is overruled.

Appellant contends in his fifth assignment of error that his two child endangering convictions were allied offenses of similar import and should have been merged for sentencing in accordance with R.C. 2941.25(A). Likewise, appellant's sixth assignment of error contends that his child endangering convictions and felonious assault conviction were also allied offenses of similar import and should have been merged for sentencing. We disagree.

R.C. 2941.25(A) provides that:

Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

In determining whether crimes are allied offenses of similar import, the Supreme Court of Ohio explained that under R.C. 2941.25(A), "[c]ourts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes 'correspond to such a degree that the commission of one crime will result in the commission of the other.'" *State v. Rance* (1999), 85 Ohio St.3d 632,

638, 710 N.E.2d 699, quoting *State v. Jones* (1997), 78 Ohio St.3d 12, 14, 676 N.E.2d 80. The court explained that if the elements do correspond, the defendant may not be convicted of both "unless the court finds that the defendant committed the crimes separately or with separate animus." *Id.* at 638-639, 676 N.E.2d 80; R.C. 2941.25(B).

In concluding that appellant's child-endangering convictions were not lesser included offenses, we have already determined that a violation of R.C. 2919.22(B)(1), as statutorily defined, does not automatically result in a violation of R.C. 2919.22(A). Accordingly, under the *Rance* analysis, the two child-endangering offenses do not correspond to such a degree that the commission of one crime will result in the commission of the other. Therefore, the two offenses are not allied offenses of similar import and appellant could properly be convicted of both offenses. *See Jones* and *Smathers, supra.* Appellant's fifth assignment of error is overruled.

Felonious assault and child endangering as proscribed under R.C. 2919.22(A) are not allied offenses of similar import. *State v. Cudgel* (Mar. 9, 2000), Franklin App. No. 99AP-532; *State v. Barton* (1991), 71 Ohio App.3d 455, 464-465, 594 N.E.2d 702. Although the two offenses both have causation and the resultant serious physical harm in common, a conviction of felonious assault requires proof that appellant acted knowingly while the child-endangering conviction only requires proof that appellant acted recklessly. "Although proof of knowledge may suffice to prove recklessness, proof of recklessness is not sufficient to prove knowledge." *Cudgel,* supra. Given these different culpable mental states, it cannot be said that an act of child endangering in violation of R.C. 2919.22(B)(1) results in the commission of a felonious assault. In addition, one can commit an act of felonious assault on someone over the age of 18 and not be guilty of child endangering. *State v. Anderson* (1984), 16 Ohio App.3d 251, 254, 475 N.E.2d 492; *State v. Potter,* Cuyahoga App. No. 81037, *2003-Ohio-1338,* fn. 4, overruled on other grounds, *State v. Campbell* (1991), 74 Ohio App.3d 352, 598 N.E.2d 1244. Accordingly, because the statutory elements of the crimes do not correspond to such a degree that the commission of one crime will result in the commission of the other, the offenses are not allied offenses of similar import. Therefore, appellant's sixth assignment of error is overruled.

Exhibit 9 to Return of Writ.  Again, the decision of the state appellate court is entitled to a

presumption of correctness.  28 U.S.C. §2254(d), (e).  Petitioner has failed to establish that the state

appellate court's decision is so unreasonable as to justify federal habeas corpus relief.  *See Williams*

*v. Taylor,* 529 U.S. 362 (2000).

 First, to the extent that petitioner raises an issue of state law, such claim is not appropriate

for federal habeas corpus review.  A federal court may review a state prisoner's habeas petition only

on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of

the United States.  28 U.S.C. §2254(a).  A federal court may not issue a writ of habeas corpus "on

the basis of a perceived error of state law."  *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Smith v.*

*Sowders*, 848 F.2d 735, 738 (6th Cir. 1988).  A federal habeas court does not function as an additional

state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris*,

845 F.2d 610, 614 (6th Cir. 1988).  "'[F]ederal courts must defer to a state court's interpretation of

its own rules of evidence and procedure'" in considering a habeas petition.  Id. (quoting *Machin v.*

*Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).  Only where the error resulted in the denial of

fundamental fairness will habeas relief be granted.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.

1988).  Such are not the circumstances here.

 The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through

the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice

put in jeopardy of life or limb."  U.S. Const. amend. V.  The clause has been interpreted as protecting

criminal defendants from successive prosecutions for the same offense after acquittal or conviction,

as well as from multiple punishments for the same offense.  *Brown v. Ohio*, 432 U.S. 161, 165

(1977).  The traditional test for double jeopardy is the "same elements" test set forth in *Blockburger*

*v. United States,* 284 U.S. 299, 304 (1932)(requiring the court to determine whether each charged

offense "requires proof of an additional fact which the other does not"). The *Blockburger* test is designed to deal with the situation where closely connected conduct results in multiple charges under separate statutes. Under *Blockburger,* the critical question is whether the multiple charges in reality constitute the same offense. Thus, the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are duplicative. If the elements of the two statutes are substantially the same, then double jeopardy is violated by charging the defendant under both.[2]

In addition, a defendant cannot be prosecuted for a greater offense after conviction or acquittal of the lesser included offense. *Brown v. Ohio, supra.* In *Brown*, the defendant was convicted on his guilty plea to the offense of joyriding and was subsequently convicted of the offense of auto theft. Both convictions were based on the same events. Under Ohio law, joyriding is a lesser included offense of auto theft. The Supreme Court, noting that conviction on a charge of joyriding required no proof not required for conviction on a charge of auto theft, held that the subsequent prosecution of the greater charge was precluded by double jeopardy principles. 432 U.S. at 168-69. The Supreme Court emphasized that the prohibition of successive prosecutions serves a policy of finality, protecting a defendant from a governments attempts to re-litigate facts or secure additional

---

[2] In *Grady v. Corbin*, 499 U.S. 508, 519 (1990),which was decided after Blockburger, the United States Supreme Court held that the Double Jeopardy Clause also barred prosecution of multiple offenses where

> the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

However, the Supreme Court overruled the "same conduct" rule of *Grady*, concluding that *Grady* was inconsistent with Supreme Court precedent and the common law understanding of double jeopardy. *United States v. Dixon*, 509 U.S. 688, 704 (1993).

penalties. *Id.*, at 165-66.

Petitioner was convicted of child endangering under O.R.C. §2919.22(A), and (B)(1), which

provides:

> (A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age... shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. It is not a violation of a duty of care, protection, or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body.

> (B) No person shall do any of the following to a child under eighteen years of age... :

> (1) Abuse the child[.]

The indictment charged petitioner in relevant part as follows:

> Count 1:

> ... Gerardo Villa-Garcia... on or about the 21st day of September in the year of our Lord, 2002, within the County of Franklin... in violation of section 2919.22 of the Ohio Revised Code, did recklessly abuse Madison Fredritz, resulting in serious physical harm to the said Madison Fredritz, [she] being a child under eighteen (18) years of age.

> ***

> Count 3:

> ... Gerardo Villa Garcia... on or about the 21st day of September in the

35

> year of our Lord, 2002, within the County of Franklin... in violation
> of section 2919.22 of the Ohio Revised Code, being the parent,
> guardian, custodian, person having custody or control, or person in
> loco parentis, of a child under eighteen (18), to wit: five (5) months,
> of age, did recklessly create a substantial risk to the health or safety
> of the said Madison Fredritz by violating a duty of care, protection, or
> support, resulting in serious physical harm to the said Madison
> Fredritz....

Exhibit 1 to Return of Writ.  Additionally, petitioner was convicted of felonious assault, in violation

of O.R.C. §2903.11, which provides:

> (A) No person shall knowingly:
>
> (1) Cause serious physical harm to another;
>
> ***
>
> (B) Whoever violates this section is guilty of felonious assault, an
> aggravated felony of the second degree....

The indictment charged petitioner in relevant part:

> Count 2:
>
> ... Gerardo Villa-Garcia... on or about the 21st day of September in the
> year of our Lord, 2002, within the County of Franklin... in violation
> of section 2903.11 of the Ohio Revised Code, did knowingly cause
> serious physical harm to Madison Fredritz.

Exhibit 1 to Return of Writ.  Plainly, all of the charges arose out of the same conduct.  As previously

discussed, however, *Blockburger* "focuses on the statutory elements of the offense.  If each requires

proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial

overlap in the proof offered to establish the crimes." *Iannelli v. United States*, 420 U.S. 770, 785

36

n.17 (1975); *see also Gore v. United States,* 357 U.S. 386, 388 (1958).

Applying the test here, this Court agrees with the appellate court's conclusion that petitioner's prosecution on endangering children under §§2919.22(A), and (B)(1) and on felonious assault, while arising from the same conduct nonetheless survives the *Blockburger* test. As noted by the state appellate court, a conviction under §2919.22(A) requires that "a person who is the parent, guardian, custodian, person having custody or control, or person *in loco parentis*" recklessly create a substantial risk to the health or safety of a child by violating a duty of care, protection or support. Neither §2903.11 nor §2919.22(B)(1) contain such requirements. Additionally, 2919.22(B)(1) requires that reckless abuse occur. Additionally, felonious assault does not require that the victim be under the age of eighteen. Felonious assault also requires that a person "knowingly" cause physical harm. §2919.22(A) does not contain a requirement that physical harm occur. Finally, as discussed by the state appellate court, none of the foregoing offenses are lesser included offenses of each other. *See Brown v. Ohio, supra.*

Claims one, two and three are without merit.

### III.  CLAIMS FIVE, SIX AND SEVEN

In claims five and seven, petitioner asserts that he was improperly denied his right to appeal his February 6, 2003, sentence. In claim six, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to file a timely appeal of his February 6, 2003, sentence. In view of the Magistrate Judge's recommendation that petitioner's sentence be vacated, and that he be released from incarceration unless the State of Ohio re-sentences him within ninety

(90) days, such issues are moot and will not be addressed herein.

IV.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be **GRANTED** on claims eight and nine, and that petitioner's sentence be **VACATED** and he be released from incarceration unless the State of Ohio re-sentences him within ninety (90) days.  The Magistrate further **RECOMMENDS** that claims one, two and three be **DISMISSED** as without merit, and that claims five, six and seven not be considered as moot.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


                                   s/Mark R. Abel                
                                   United States Magistrate Judge